IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARGARET J. BURTON, | ) |
| Plaintiff, | ) |
| v. | ) No. 15 C 4556 |
| COMMUNITY & ECONOMIC DEVELOPMENT ASSOCIATION OF COOK COUNTY, INC., BABETTE THOMPSON, and EDMOND GEORGE | ) Judge Virginia M. Kendall |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Margaret J. Burton filed this seven-count Amended Complaint against the Community Economic & Development Association of Cook County (CEDA), Babette Thompson, and Edmond George for race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866, the Age Discrimination in Employment Act, and Illinois state law of tortious interference with employment expectancy. Specifically, Burton alleges: (1) race discrimination by CEDA in violation of Title VII of the Civil Rights Act of 1964, (2) retaliation by CEDA in violation of Title VII, (3) race discrimination by CEDA in violation of 42 U.S.C. § 1981, (4) retaliation by CEDA in violation of §1981, (5) age discrimination by CEDA in violation of the ADEA, (6) retaliation by CEDA in violation of ADEA, (7) tortious interference with employment expectancy by Thompson, and (8) tortious interference with employment expectancy by George. Defendants now move to dismiss Counts I, V, and VII pursuant to Rule 12(b)(6) of the Federal Rule of Civil Procedure. (Dkt. Nos. 29, 39). For the following reasons, the Court grants CEDA's Motion to Dismiss Counts I and V [29] and denies Thompson's Motion to Dismiss Count VII [39].

1

# BACKGROUND[1]

CEDA is a non-profit agency that provides education as well as community and economic development services. (*Id.* at ¶ 6). From January 2001 until her termination on April 17, 2012, Burton—an African American woman over the age of 40 years at all times relevant to these allegations—worked for CEDA in various educational positions. (Dkt. No. 15 at ¶¶ 5, 11-12). At the time of her termination, Burton was serving as a child development specialist. (*Id.* at ¶ 5). Defendants Thompson and George were her supervisors. (*Id.* at ¶¶ 7-8).

Beginning in June 2005, Burton claims her work performance was scrutinized and criticized by her superiors at a much higher degree than her similarly-situated non-African American colleagues. (*Id.* at ¶ 15). She claims she was not offered the same promotion opportunities; she was repeatedly screamed at by supervisors and embarrassed in the presence of students, parents, and co-workers; she was repeatedly shadowed and otherwise monitored; and her schedule and daily responsibilities were repeatedly changed by her supervisors without providing prior notice to her. (*Id.*) Burton further claims she was limited in her ability to apply for available positions, compensation, terms, conditions, and privileges of employment because of her age. (*Id.* at ¶ 16).

On June 9, 2010, Burton filed a complaint against CEDA with the Illinois Department of Human Rights (IDHR) alleging race and age discrimination, as well as retaliation. (*Id.* at ¶ 19). Subsequent to her filing of this first charge of discrimination, Burton claims she was subjected to further adverse employment action, including a negative performance evaluation from Thompson on January 18, 2011.[2] (*Id.* at ¶ 20). Burton proceeded to file two additional claims

---

[1] The Court takes the following allegations from the Complaint and treats them as true in evaluating this motion. *See Vinson v. Vermillion County, Ill.*, 776 F.3d 924, 925 (7th Cir. 2015).
[2] The dates of the negative performance evaluations were not included in the First Amended Complaint, but rather in the charges of discrimination attached to CEDA's motion to dismiss. The Court takes judicial notice of the charges

with IDHR on February 24, 2011 and July 20, 2011, alleging race and age discrimination and retaliation against CEDA. (*Id.* at ¶ 21). Burton claims she was again subjected to adverse employment action, including another negative performance evaluation from Thompson on April 5, 2012. (*Id.* at ¶ 22).

Ultimately, on April 17, 2012, Burton was discharged by CEDA at the direction or influence of Thompson and George. (*Id.* at ¶¶ 23-24). Burton timely filed a fourth charge of discrimination with the Equal Opportunity Employment Commission (EEOC). (*Id.* at ¶ 4). In this fourth charge, Burton specifically alleged that the negative performance evaluation she received on April 5, 2012 and her ultimate termination on April 17, 2012 were in retaliation for her earlier filing of charges of discrimination against CEDA. (*See* Dkt. No. 30–6 at 1). Specifically, Burton listed "retaliation" in the "cause of discrimination based on" section and provided the following narrative:

> I. A. Issue/Basis: Negative performance evaluation—April 5, 2012, in retaliation for having filed previous discrimination charges numbers 2010CN3951, 2012CA2434 and 2011CF0156[3] against Respondent with the Illinois Department of Human Rights
>
> …
>
> II. A. Issue/Basis: Discharge—April 17, 2012, in retaliation for having filed previous discrimination charge numbers 2010CN3951, 2012CA2434 and 2011CF0156, against Respondent with the Illinois Department of Human Rights.

---

filed in support of the motion to dismiss briefing that are in the public record, without converting the motion to dismiss into a motion for summary judgment. *Pugh v. Tribune Co.*, 521 F.3d 686, 691 n. 2 (7th Cir. 2008); *Moses v. U.S. Steel Corp.*, No. 11-CV-385-PRC, 2012 WL 1066769, at *1 (N.D. Ill. Mar. 28, 2012) (taking judicial notice of plaintiff's charges of discrimination and right-to-sue letters).
[3]Burton's second and third charges of discrimination appear to be referenced incorrectly in her fourth charge. According to the record before this Court, Burton's second and third charges were identified by IDHR as charge numbers "2011CA2434" and "2012CF0156"—not "2012CA2434" and "2011CF0156" as they are listed in Burton's fourth charge. The parties, however, do not suggest that any other relevant charges were filed by Burton and they agree that Burton's fourth charge was premised on retaliation allegedly precipitated by her filing of discrimination charges on June 9, 2010, February 24, 2011, and July 20, 2011. The slight two-digit discrepancy in the numbers appears to be a typographical error and does not impact the Court's exhaustion analysis.

(*See* Dkt. No. 30, Ex. 6 at 1-2). After receiving her fourth right to sue letter on March 17, 2015, Burton timely filed this action *pro se*. (Dkt. No. 15 at ¶ 4). After being appointed counsel, Burton filed this First Amended Complaint on June 30, 2015. (*See id.*) Defendant CEDA now moves to dismiss Counts I and V of the First Amended Complaint for Burton's failure to exhaust her administrative remedies or, alternatively, timely bring this action. Defendant Thompson moves to dismiss Count VII of the First Amended Complaint for failure to state a claim upon which relief may be granted.

## DISCUSSION

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Lodholtz v. York Risk Servs. Group, Inc.*, 778 F.3d 635, 639 (7th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The factual allegations must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). The Court "construe[s] all well-pleaded facts and draw[s] all inferences in the light most favorable to the nonmoving party." *See Vesely v. Armslist LLC*, 762 F.3d 661, 664 (7th Cir. 2014).

### II. Counts I and V

CEDA argues that Burton's discrimination claims in Counts I and V were not part of the fourth charge she filed with the EEOC and upon which the EEOC issued its subsequent right-to-sue letter. Based on this omission, CEDA contends that Burton has failed to exhaust her administrative remedies with respect to those claims and that they should be dismissed. In

general, filing an administrative claim is a condition precedent to filing suit in federal court. *Teal v. Potter*, 559 F.3d 687, 691 (7th Cir. 2009). Where a plaintiff has exhausted her administrative remedies, she can only bring claims to federal court that were included in her IDHR or EEOC charge of discrimination. *Id.* This requirement exists to ensure employers have notice of charges filed against them and to facilitate resolution of the dispute without court involvement. *Id.*; *see also Cheek v. Western & Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994) ("allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would frustrate the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge").

Nevertheless, a plaintiff may proceed on claims not explicitly set out in a charge if those claims are "like or reasonably related" to the claims in her charge and could "be expected to grow out of an EEOC investigation of the charge." *Teal*, 559 F.3d at 691; *see also Reynolds v. Tangherlini*, 737 F.3d 1093, 1099-1100 (7th Cir. 2013) ("[P]laintiffs may pursue only those claims that could reasonably be expected to grow out of the administrative charges."); *Cheek*, 31 F.3d at 501 ("the EEOC charge and the complaint must, at minimum, describe the same conduct and implicate the same individuals"). When an EEOC charge alleges a particular theory of discrimination, allegations of a different type of discrimination in a subsequent complaint are only related if the new allegations can reasonably be inferred from the facts alleged in the charge. *See Ezell v. Potter*, 400 F.3d 1041, 1046 (7th Cir. 2005) ("Claims are reasonably related if there is a factual relationship between them."); *see also Harper v. Godfrey Co.*, 45 F.3d 143, 148 (7th Cir. 1995). When faced with an exhaustion issue, the Court is not necessarily confined to considering only the body of the charge. Additional documents "may be considered when it is

clear that the charging party intended the agency to investigate the allegations." *Cheek*, 31 F.3d at 502.

Here, the Court begins by examining Burton's fourth EEOC charge, which is the basis for her discrimination claims before this Court. In her fourth charge, Burton listed "retaliation" in the "cause of discrimination based on" section and provided the following narrative:

> I. A. Issue/Basis: Negative performance evaluation—April 5, 2012, in retaliation for having filed previous discrimination charges numbers 2010CN3951, 2012CA2434 and 2011CF015 against Respondent with the Illinois Department of Human Rights
>
> …
>
> II. A. Issue/Basis: Discharge—April 17, 2012, in retaliation for having filed previous discrimination charge numbers 2010CN3951, 2012CA2434 and 2011CF0156, against Respondent with the Illinois Department of Human Rights.

Burton insists that because she explicitly states in her fourth charge that the retaliation against her was based on her prior filing of three discrimination charges—which she specifically referenced by their IDHR reference numbers—the fourth charge is like and reasonably related to the Title VII and ADEA claims she filed in her First Amended Complaint. That is not the case.

In general, "retaliation and discrimination charges are not considered 'like or reasonably related' to one another." *See Swearnigen-El v. Cook Cty. Sheriff's Dep't*, 602 F.3d 852, 864-65 (7th Cir. 2010); *see also Sitar v. Ind. Dept. of Transp.*, 344 F.3d 720, 726 (7th Cir. 2003) (citing *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 110–15 (2002) (emphasizing the separate nature of claims based on specific discriminatory or retaliatory acts for purposes of the limitations period)). These claims may be "so related and intertwined in time, people, and substance" that they must be thus considered, *see id.*, but in a case such as this—where there is no such entwinement—there is no need to deviate from the general rule. The "unusual cases" that warrant consideration are limited to situations where precluding a plaintiff from bringing a

claim in federal court would be an adherence to technicalities to the detriment of a plaintiff's clear intent in her EEOC charge. *See, e.g., Taylor v. W. & S. Life Ins. Co.*, 966 F.2d 1188, 1195 (7th Cir. 1992) (allowing plaintiff to raise events occurring in different location and after time period stated in charge of discrimination where such events were part of same pattern of discriminatory conduct); *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 168 (7th Cir. 1976) (allowing plaintiff to bring sex discrimination claim in federal court despite only checking racial discrimination on her charge where facts alleged in charge clearly showed sex discrimination as well as race). Here, there is no such risk of frustrating Burton's intent.

Burton's clear intent in filing her fourth administrative charge was to complain of alleged retaliation for her filing of discrimination complaints with the EEOC and/or IDHR: not to complain of the underlying discrimination she had already grieved and for which she had already been provided right-to-sue letters. In her Amended Complaint, Burton alleges she was discriminated against based on her age and race when her work performance was unfairly scrutinized and criticized by her superiors; she was not offered promotion opportunities; she was repeatedly screamed at by supervisors and embarrassed in the presence of students, parents, and co-workers; she was repeatedly shadowed and otherwise monitored; and her schedule and daily responsibilities were repeatedly changed by her supervisors without providing prior notice to her. These allegations of discrimination were included in the charges Burton filed with the EEOC and/or IDHR on or around June 9, 2010; February 24, 2011; and July 20, 2011. It was not until May 14, 2012, 98 days after Burton received her third right-to-sue letter, that she filed a fourth administrative charge against CEDA—this time for retaliation. The discrimination charges say nothing of this retaliation and there is a substantial gap in time between the alleged discrimination and the filing of Burton's retaliation charge. There are "unusual case[s] in which a

7

single retaliation charge will support a broader range of claims," but this is not such a case. *See Sitar*, 344 F.3d at 726 (retaliation charge based on previous charge of discrimination does not bring previous discrimination charge within the scope of EEOC complaint); *see also O'Rourke v. Continental Cas. Co.*, 983 F.2d 94, 97 (7th Cir. 1993) (retaliation not like or reasonably related to age discrimination); *Noreuil*, 96 F.3d at 258 (same). Burton had the opportunity to bring her discrimination claims in federal court; she received three right-to-sue letters explaining that possibility to her. Her failure to timely do so cannot be cured by this subsequently-filed retaliation charge. Indeed, allowing Burton's discrimination claims to proceed would render the statute of limitations for her discrimination claims meaningless. A discrimination plaintiff cannot circumvent the statute of limitations merely by filing a retaliation charge citing to earlier discrimination. *See, e.g., Lacy v. Ameritech Mobile Commc'ns, Inc.*, 965 F. Supp. 1056, 1064 (N.D. Ill. 1997) ("[Plaintiff] may not rely on the 'like or reasonably related' standard to work backward in time, thus circumventing the statutory filing deadlines…. [S]uch an argument would abolish the whole notion of limitations—for any new act of discrimination would dredge up and render actionable every long-outlawed historical occurrence of the same kind.").

Burton's attempt to save her claims by tying them to her three previous EEOC charges of discrimination does nothing to save them. As already mentioned, Burton's claims of discrimination in this case fall comfortably within the scope of her prior EEOC charges, but her time for filing a complaint based on those charges has long since expired. Burton received her first right to sue letter on May 20, 2010; her second on March 21, 2012; and her third on February 6, 2012.[4] Therefore, she had until August 18, 2010, June 19, 2012, or May 6, 2012, respectively, to file a civil suit based on the underlying charges of discrimination. *See* 42 U.S.C.

---

[4] Burton received her right to sue letter in response to her third charge of discrimination (filed July 21, 2011) before her right to sue letter in response to her second charge of discrimination (filed February 24, 2011).

§ 2000e-5(f)(1); 29 U.S.C. § 626(e); *Bibbs v. Sheriff of Cook County*, 618 F. App'x 847, 848 n.1 (7th Cir. 2015) (citing 42 U.S.C. § 2000e-5(f)(1)) ("Title VII imposes a further requirement that a claimant must file suit within 90 days of receiving notice of the 'right-to-sue' or the suit is untimely"). Burton filed her Complaint in this case on May 22, 2015, well beyond the expiration of the statutorily authorized periods for her prior three charges of discrimination. And, as previously discussed, her filing of a retaliation claim with the EEOC based on those prior charges cannot be used to save an otherwise untimely discrimination claim. Counts I and V of the First Amended Complaint are dismissed with prejudice.

### III. Count VII

Defendant Thompson also moves pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss Count VII of Burton's First Amended Complaint for tortious interference with employment expectancy. Under Illinois law, there are four elements in a tortious interference with employment expectancy claim: (1) the plaintiff-employee had a reasonable expectation of continuing a valid business relationship; (2) the defendant was aware of the plaintiff's expectancy; (3) the defendant purposefully acted to prevent the plaintiff's legitimate expectancy from ripening or to cause a termination of the employment relationship; and (4) damages to the plaintiff resulted from the defendant's actions. *See Ali v. Shaw*, 481 F.3d 942, 944 (7th Cir. 2007); *see also Fellhauer v. City of Geneva*, 568 N.E.2d 870, 878 (Ill. 1991). Thompson argues that Burton failed to plead facts sufficient to establish the third element, purposeful action.

With respect to the third element, the plaintiff must plead sufficient facts to infer that the defendant acted intentionally and without just cause. *See George A. Fuller Co. v. Chi. Coll. Of Osteopathic Med.*, 719 F.2d 1326, 1332 (7th Cir. 1983). With respect to the intentionality

consideration, Burton alleges that Thompson scrutinized her work more severely than she scrutinized the work of other employees; screamed at her in the presence of students, parents, and co-workers; shadowed and monitored her extensively; wrote unsubstantiated negative performance evaluations of Burton; and directed and/or influenced Burton's ultimate termination. These allegations of gross impropriety, if proven, are sufficient to show that Thompson acted intentionally. *See Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 485 (1998) (the element of "purposeful" or "intentional" interference requires that the plaintiff show "that the defendant has committed some impropriety" in interfering with his or her expectancy of continued employment) (quoting Restatement (Second) of Torts § 766B, Comment a (1979) ("In order for the actor to be held liable, this Section requires that his interference be improper")).

The allegations are also sufficient to demonstrate such action was without just cause. In general, just cause to terminate an employee exists where the employee has committed some sort of misconduct or otherwise failed to meet the employer's legitimate expectations. *See Satyshur v. General Motors Corp.*, No. 00-1299, 2000 WL 1568508, at *4 (7th Cir. Oct. 16, 2000) (just cause to terminate employee existed where employee committed fraud or in alternative was grossly careless); *Ress v. Comptroller's Off. Of Ill.*, No. 97-C-5569, 2000 WL 28265, at *7 (N.D. Ill. Jan. 12, 2000) (just cause to terminate where employee failed to meet employer's legitimate job expectations). Burton alleges that she met CEDA's legitimate expectations and there is no basis from which to infer that she was engaged in any sort of misconduct; she has pled facts sufficient to infer that CEDA did not have just cause to terminate her employment.

Thompson argues that, in addition to these requirements, proper pleading of the third element also requires Burton to establish that Thompson acted in furtherance of her personal goals and contrary to the best interest of CEDA. (*See* Dkt. No. 40 at 3–4). Under Illinois law, this

added requirement exists in cases brought against individuals that enjoy some qualified privilege for their conduct as a function of their position. *See Vickers v. Abbott Labs.*, 719 N.E.2d 1101, 1116 (Ill. App. Ct. 1999) (dismissing tortious interference claim against corporate officers where plaintiff failed to plead facts indicating officers acted maliciously or in bad faith); *Fuller*, 719 F.2d at 1328 (dismissing tortious interference claim against president and vice president of corporation where plaintiff did not plead facts showing officers acted in furtherance of personal goals and contrary to best interest of corporation). For example, under Illinois law, "[c]orporate officers, directors, shareholders and agents are normally privileged against claims that their activities interfered in a third party's relationships with [the officers] principals." *See, e.g., QSRSoft, Inc. v. Restaurant Tech., Inc.*, No. 06 C 2734, 2006 WL 3196928, at *11 (N.D. Ill. Nov. 2, 2006) (quoting *Citylink Group v. Hyatt Corp.*, 729 N.E.2d 869, 877 (Ill App. Ct. 2000). Burton does not appear to dispute the applicability of this added requirement, *see* Dkt. No. 43, 5, and the Court need not determine whether it is required at this stage. Even assuming Burton must plead facts sufficient to overcome whatever privilege Thompson is entitled to, the Court finds she has satisfied that threshold pleading requirement. Burton alleges that despite meeting CEDA's expectations, she was targeted by Thompson for adverse treatment. Specifically, she alleges that Thompson and George "directed and/or influenced CEDA's discharge" of her from employment with CEDA. (*See* Dkt. No. 15 at ¶ 24). If Burton was a good employee, then an effort to discipline or fire her was contrary to the best interests of the corporation. It follows that if Thompson engaged in such conduct, she was not furthering the best interests of her employer. *See, e.g., Siakpere v. Boucher*, No. 84-C-6768, 1986 WL 5657, at *6 (N.D. Ill. May 7, 1986) ("a trier of fact could infer that [defendant-employer] lost sight of the best interests of the corporation when he sought to get a valued employee fired") (citing *Kufalk v. Hart*, 610 F. Supp.

1178 (N.D. Ill. 1985)). Thus, even under the heightened pleading standard for claims against privileged corporate employees, Burton has stated a claim for tortious interference with employment expectancy. Thompson's Motion to Dismiss is denied.

## CONCLUSION

For the reasons stated, the Court grants CEDA's Motion to Dismiss Counts I and V of the First Amended Complaint [29]. Counts I and V are dismissed with prejudice. The Court denies Thompson's Motion to Dismiss Count VII of the First Amended Complaint [39].

Date: __5/27/2016____   _____
 Virginia M. Kendall
 United States District Court Judge
 Northern District of Illinois